## FRANCISCUS REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 8703.

Circuit Court of Appeals, Eighth Circuit.
March 8, 1930.

Marion C. Early, of St. Louis, Mo. (B. B. Pettus, of Washington, D. C., and M. B. Wood, of St. Louis, Mo., on the brief), for appellant.

Morton Poe Fisher, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before STONE and BOOTH, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

This appeal involves income taxes for the years 1920 and 1921 in the sum of $6,153.57 and $4,117.55, respectively. It is taken from an order of redetermination entered by the United States Board of Tax Appeals and promulgated in November, 1928.

The petition for review is in conformity with and pursuant to an act approved February 26, 1926.

The sole question presented is whether the appellant was entitled to be classed as a personal service corporation during the years mentioned within the purview of section 200 of the Revenue Act of 1918 (40 Stat. 1058) and the Revenue Act of 1921 (42 Stat. 227). By said several acts it is provided that "personal service corporations shall not be subject to taxation under this title."

By section 200, appearing in the two acts in identical language, the term "personal service corporation" is defined to mean: "A corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor."

█ Under the law, findings of primary facts are committed to the Board of Tax Appeals and will not be reviewed by this court when supported by substantial evidence. Denver Live Stock Commission Co. v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 543; Ox Fibre Brush Co. v. Blair, Commissioner of Internal Revenue (C. C. A.) 32 F. (2d) 42; Atlantic Coast Distributors v. Commissioner of Internal Revenue (C. C. A.) 33 F.(2d) 733.

A review of the evidence adduced before the United States Board of Tax Appeals shows that the appellant was incorporated in February, 1920. Its capital was fixed at $50,000 and was made up of the good will of the partnership of Franciscus and Kunz. The individual members of said partnership became the chief stockholders of the corporation. They had previously been engaged in the real estate business in the city of St. Louis, Mo.

The business conducted by the partnership, and thereafter by the corporation, consisted, among other things, of making and disposing of loans for customers. To expedite such loans advances were made out of the assets of the corporation. Agreeable to the requirements of a borrower, the appellant would advance the money and carry the loan until disposition could be made thereof. This involved a revenue accruing to the company both on account of commissions on such loans and interest accruing pending sale, or other disposition.

The funds thus used in the conduct of the business consisted of accumulated profits; the money belonging to estates, either represented by the individuals or the corporation, and money left for reinvestment in cases where mortgages or deeds of trust or other investments had matured and had been paid. Moreover, to provide such additional funds as may have been needful, the corporation would borrow money upon its notes indorsed by the controlling stockholders as sureties.

During the year 1920 the company borrowed $64,000 and paid on account of bor-

rowed money $57,000. At the beginning of the year 1920 it owed a balance of $20,000, so at the beginning of the year 1921 it owed a balance of $27,000. During the year 1921 it borrowed $65,000 and paid $62,000. During said periods it made loans aggregating $282,-015 and $208,340.57, respectively. It disposed of loans during said two periods in aggregate amounts as follows:

For the year 1920 $305,740.16 and for the year 1921 $183,770.57. At the end of the year 1920 it carried a balance of bills receivable in the sum of $18,953.57 and at the end of 1921 $24,570. For the year 1920 its net interest receipts arising from loans amounted to $2,548.90 and in 1921 $1,198.49. Its commissions on such loans were $35,192.03 in 1920 and $28,532.78 for 1921.

■ It will be observed from the foregoing that the business of the appellant was transacted on the basis of borrowed capital, accumulated profits, bailments, and money left for reinvestment. A pertinent inquiry appears to be whether this constitutes employed capital within the purview of the statute quoted.

1. Regulations 45, Treasury Department (1920 Ed.), relating to the income tax and war profits and excess profits tax under the Revenue Act of 1918, provides by article 1532 as follows: "The term 'capital' as used in Section 200 of the statute * * * means not only capital actually invested by the owners or stockholders, but also capital secured in other ways. Thus, if capital is borrowed either directly as shown by * * * notes, bills payable, or other paper, or indirectly as shown by accounts payable or other forms of credit, or if the business of the corporation is in any way financed by or through any of the owners or stockholders, these facts will be deemed evidence that the use of capital is necessary. If a substantial amount of capital is used to finance or carry the accounts of clients or customers, it will be inferred that because of competition or other reasons such practice is necessary in order to secure or hold business which otherwise would be lost, and that the corporation is not a personal service corporation. * * * In general the larger the amount of the capital actually used the stronger is the evidence that capital is necessary and is a material income-producing factor and that the corporation is not a personal service corporation."

In Feeders' Supply Co. v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 274, loc. cit. 276, the court defined "capital"

as follows: "The word 'capital,' as applied to the money of a corporation, may refer to the money paid in by the stockholders for the use of the corporation, and commonly known as the capital stock; but, in a wider and more popular sense, it includes all the money and other property of the corporation used in transacting its business. So long as the profits are not withdrawn from the business, they constitute a part of the capital. The distinction between the capital and surplus, so long as both are used in carrying on the business, is theoretical merely, and is largely a matter of bookkeeping."

In 7 R. C. L. § 165, p. 196, it is said: "The term 'capital' is used to designate that portion of the assets of a corporation, regardless of their source, which is utilized for the conduct of the corporate business and for the purpose of deriving therefrom gains and profits."

It will be seen from the foregoing authorities that the Board of Tax Appeals was entirely justified in treating the money employed in the transaction of appellant's business as capital, although not contributed in actual cash or through tangible assets by the stockholders. Moreover, the statute under consideration expressly refers to capital "whether invested or borrowed."

■ 2. It remains to be determined whether the capital as thus constituted was a material income producing factor as found by the Board of Tax Appeals. Unquestionably the use of its capital in advancing money on loans facilitated its transaction and materially aided in its income from commissions. Upon the evidence, its commissions on its loans and its net interest income constituted the largest element of appellant's gross income. Its gross income for the year 1920 was $59,908.-65. Of this amount $35,192.03 was on account of commissions of loans and sales and $2,548.90 represented the net interest receipts. During the year 1921 the gross income was $52,122.86. Its loan commissions amounted to $28,532.78 and its net interest income to $1,198.49.

Upon the evidence appellant's capital was a material income producing factor in the business carried on.

■ There was evidence sustaining the findings of the Board of Tax Appeals and its decision was fully justified. Feeders' Supply Co. v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 274; Conklin-Zonne-Loomis Co. v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 698; Denver Live Stock

Commission Co. v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 543; Hubbard-Ragsdale Co. v. Dean (D. C.) 15 F.(2d) 410, affirmed by Circuit Court of Appeals, Sixth Circuit, in 15 F.(2d) 1013. Moreover, this being a claim for exemption or a privilege granted by the government, the statute must be construed in favor of the government, even if in doubt, which we do not concede. Cornell v. Coyne, 192 U. S. 418, loc. cit. 431, 24 S. Ct. 383, 48 L. Ed. 504. To establish such exemption by evidence, the burden was upon the appellant. Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. ——; Botany Worsted Mills v. United States, 278 U. S. 282, loc. cit. 289 and 290, 49 S. Ct. 129, 73 L. Ed. 379; Feeders' Supply Co. v. Commissioner of Internal Revenue, supra.

The appellant has not carried this burden, but on the contrary the evidence showed, as found by the Board of Tax Appeals, that appellant's capital was a material income producing factor. Accordingly, the action and decision of the Board of Tax Appeals should be affirmed.